McGREGOR W. SCOTT
United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:17-MC-00180-KJM-EFB |
| Plaintiff, | |
| v. | CONSENT JUDGMENT OF FORFEITURE |
| APPROXIMATELY $41,580.00 IN U.S. CURRENCY, | |
| Defendant. | |

Pursuant to the Stipulation for Consent Judgment of Forfeiture, the Court finds:

1. On June 26, 2017, agents with the Drug Enforcement Administration ("DEA") contacted Dillon Michael Orgeron ("Orgeron" or "claimant") and Zack Shelton ("Shelton") at the Sacramento International Airport in Sacramento, California. Approximately $41,580.00 in U.S. Currency was seized from Orgeron during this encounter (hereafter "defendant currency").

2. The DEA commenced administrative forfeiture proceedings, sending direct written notice to all known potential claimants and publishing notice to all others. On or about August 29, 2017, the DEA received a claim from Orgeron asserting an ownership interest in the defendant currency.

3. The United States represents that it could show at a forfeiture trial that on June 26, 2017, Orgeron and Shelton traveled on American Airlines flight 1209 from Dallas, Texas to Sacramento, California with their origin of travel being New Orleans, Louisiana. Agents with the DEA received information regarding their travel, which revealed Orgeron was involved with seizure

1

of a large quantity of marijuana in September of 2016.

4. The United States represents that it could further show at a forfeiture trial that Orgeron and Shelton consented to searches of their carry-on bags after departing their flight from Louisiana. DEA agents searched their carry-on bags in the terminal area and found nothing of evidentiary value. DEA agents returned their carry-on bags and thanked them for their cooperation. Orgeron and Shelton then proceeded towards the terminal exit.

5. The United States represents that it could further show at a forfeiture trial that law enforcement agents then went to the luggage drop off area of the passenger terminal and found Orgeron's checked bags. The United States contends that two different drug detection dogs alerted to the odor of narcotics on Orgeron's bags. The agents took Orgeron's checked bags and went to the passenger terminal to speak with Orgeron and Shelton. The DEA Agent told Oregeron about the positive dog alert and Orgeron avoided eye-contact and spoke in a low-volume and incomplete sentences. DEA agents told Orgeron that he was not in any trouble, was not under arrest, and was free to go. When asked what was in the bag, Orgeron stated "nothing." Orgeron then said, "I'm leaving" and proceeded to exit the airport, ignoring additional questions from agents concerning the bag.

6. The United States represents that the agents searched Orgeron's checked luggage. They quickly located several white towels concealed within the luggage's lining. Each of the towels contained several bundles of U.S. Currency. Each bundle of currency was bound together with rubber bands. A deputy then advised the agents that Orgeron had returned to the terminal area and wanted to speak with them. The agents located Orgeron and asked why he had departed the terminal area earlier. Orgeron told officers he was afraid of getting in trouble. The agent repeated to Orgeron his earlier statements, as well as that of his partners that he was not in any trouble, was free to go, and was not under arrest. Orgeron acknowledged he had heard these earlier statements. Orgeron admitted the money found in his checked luggage was his.

7. The United States represents that it could further show at a forfeiture trial that a later bank count of the cash seized from Orgeron's checked luggage totaled $41,580.00 – the defendant currency. The defendant currency was broken down in the following denominations: 101 $100 bills, 151 $50 bills, 1,194 $20 bills, and 50 $1 bills.

2

8. The United States could further show at a forfeiture trial that on September 22, 2016, DEA agents seized a total of approximately 50 pounds of marijuana from Orgeron in the San Antonio airport while he was traveling with another individual that also had 50 pounds of marijuana. Orgeron told Texas law enforcement that he was "paid to transport it," meaning the marijuana.

9. Without admitting the truth of the factual assertions contained above, claimant specifically denying the same, and for the purpose of reaching an amicable resolution and compromise of this matter, claimant agrees that an adequate factual basis exists to support forfeiture of the defendant currency to the United States pursuant to 21 U.S.C. § 881(a)(6). Orgeron acknowledged that he is the sole owner of the defendant currency, and that no other person or entity has any legitimate claim of interest therein. Should any person or entity institute any kind of claim or action against the government with regard to its forfeiture of the defendant currency, claimants shall hold harmless and indemnify the United States, as set forth below.

10. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and 1355, as this is the judicial district in which acts or omissions giving rise to the forfeiture occurred.

11. This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial district in which the defendant currency was seized.

12. The parties herein desire to settle this matter pursuant to the terms of a duly executed Stipulation for Consent Judgment of Forfeiture.

Based upon the above findings, and the files and records of the Court, it is hereby ORDERED AND ADJUDGED:

1. The Court adopts the Stipulation for Consent Judgment of Forfeiture entered into by and between the parties.

2. Upon entry of this Consent Judgment of Forfeiture, $26,580.00 of the Approximately $41,580.00 in U.S. Currency, together with any interest that may have accrued on the total amount seized, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), to be disposed of according to law.

3. Upon entry of this Consent Judgment of Forfeiture, but no later than 60 days thereafter, $15,000.00 of the Approximately $41,580.00 in U.S. Currency shall be returned to claimant Dillon

1 | Michael Orgeron through his attorney Edward M. Burch.

2 |     4.    The United States of America and its servants, agents, and employees and all other public entities, their servants, agents and employees, are released from any and all liability arising out of or in any way connected with the seizure or forfeiture of the defendant currency.  This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure or forfeiture, as well as to those now known or disclosed.  Claimant waived the provisions of California Civil Code § 1542.

    5.    No portion of the stipulated settlement, including statements or admissions made therein, shall be admissible in any criminal action pursuant to Rules 408 and 410(a)(4) of the Federal Rules of Evidence.

    6.    All parties will bear their own costs and attorney's fees.

    7.    Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court enters a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465, that there was reasonable cause for the seizure of the above-described defendant currency.

IT IS SO ORDERED

DATED:  April 26, 2018.

_____
UNITED STATES DISTRICT JUDGE